IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:05CR93-V |
| | ) | |
| ERIK B. BLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:02CR93-V |
| | ) | |
| DENNIS PLAKSIN, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

TILLEY, Chief Judge

On June 13, 2005, the Memorandum and Order of Magistrate Judge Carl Horn, III was filed [Doc. # 35]. The Order provided that all documents at issue in the case of U.S. v. Blowers be unsealed. These documents include a search warrant affidavit used during the course of the investigation of Mr. Blowers, a Special Agent with the Federal Bureau of Investigation, and certain photos and documents that had been the subject of an *in camera* inspection by United States District Judge Richard Voorhees in an unrelated case, U.S. v. Plaksin, et al., No.

1

3:02CR93. Both the Defendant Erik Blowers [Doc. # 36] and the United States Attorney for the Western District of North Carolina [Doc. # 179] filed timely objections to the Magistrate Judge's recommendation.[1] On July 8, 2005, the intervenors, the Charlotte Observer Publishing Co. ("The Charlotte Observer") and WCNC-TV, filed a joint response to the Defendant's objections [Doc. # 41]. A hearing was held on September 29, 2005 in which the parties were given the opportunity to present their positions.

In accordance with 28 U.S.C. 636(b)(1), the Court has undertaken a de novo review of the Magistrate Judge's recommendation in response to the parties' objections. The Court now accepts that part of the Magistrate Judge's recommendation regarding the unsealing of the search warrant affidavit, but rejects the recommendation concerning the so-called Plaksin materials.[2]

I.

This issue arises out of the criminal case United States v. Blowers, No. 3:05CR93 in which Mr. Blowers has been indicted for violating 18 U.S.C. § 1001(a)(2). As Judge Horn noted, the Blowers case has attracted significant attention among the news media. (Mem. and Order, June 13, 2005, 5.)

---

[1] The government's objection [Doc. # 179] was docketed under U.S. v. Plaksin, et al., No. 3:02CR93.

[2] As no objection was made to the Magistrate Judge's Order that the Charlotte Observer and WCNC-TV be allowed to intervene in the Blowers and Plaksin cases, therefore this portion of the Magistrate Judge's order is adopted.

Accordingly, the Charlotte Observer and WCNC-TV have filed motions requesting that the Court unseal portions of the search warrant affidavit for Mr. Blowers' office which had been ordered sealed by U.S. Magistrate Judge Swearingen and certain documents, including photographs, which had been submitted to United States District Judge Richard Voorhees for an *in camera* inspection during his consideration of the United States' motion to exclude any mention of those documents during the trial of Brian and Keith Ladner (otherwise referred to by the parties as the Plaksin case). Mr. Blowers opposes the intervenors' motions to unseal in their entirety and the United States Attorney has requested that the documents filed in the Plaksin case remain sealed.

II.

Mr. Blowers requests that paragraphs 53 and 55 and footnotes 3, 4, 10, and 11 of the search warrant affidavit be redacted and remain under seal [Doc. # 36]. The Charlotte Observer and WCNC-TV urged the Court to adopt the Magistrate Judge's recommendation [Doc. # 41]. The United States does not object to the release of the search warrant materials [Doc. # 28].

Mr. Blowers argues that portions of the search warrant affidavit should remain under seal because (1) they contain statements that will not be admissible at trial and (2) these statements will result in unfair prejudice to Mr. Blowers if they are released at this time. He contends that prospective jurors are likely to be exposed to the prejudicial, inadmissible statements contained in the search warrant

affidavit and, as a result, the court will be unable to ensure his Sixth Amendment right to a fair trial.

In <u>Washington Post Co. v. Hughes</u>, the Fourth Circuit noted that the district court, when determining whether court documents should remain under seal, must strike a careful balance between the public's right of access through the media and the defendant's right to a fair trial. 923 F.2d 324, 329 (4th Cir. 1991). However, in striking this balance, the district court should remain aware that the common law presumption favors public access to judicial documents.[3] <u>Id.</u>; see also, <u>Stone v. Univ. of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 182 (4th Cir. 1988) ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances."). Thus, "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." 923 F.2d at 329 (quoting <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 565 (1976)).

In particular, the Fourth Circuit has pointed to the efficacy of the voir dire process in identifying prospective jurors whose prior knowledge of a case would prevent them from rendering an impartial verdict. <u>Washington Post Co.</u>, 923 F.2d at 329 ("The reason that fair trials can coexist with media coverage is because there are ways to minimize prejudice to defendants without withholding information

---

[3] The Fourth Circuit has held that the common law right of access to judicial documents includes search warrant materials. <u>Baltimore Sun Co. v. Goetz</u>, 886 F.2d 60, 64 (4th Cir. 1989).

4

from public view."); In re Charlotte Observer, 882 F.2d 850, 855 (4th Cir. 1989) ("Voir dire is of course the preferred safeguard against this particular threat to fair trial rights."). The Fourth Circuit has also rejected the position that admissibility at trial should govern pretrial disclosure decisions. Washington Post Co., 923 F.2d at 330. An "admissibility standard" would ignore the ability of the voir dire process to identify jurors who have been prejudiced by pretrial publicity and are therefore unable to render a verdict based on the evidence presented at trial. Id. It would also exclude much of the criminal justice system from the public arena. "If information could never be disclosed simply because it might be inadmissible at trial, much about the world of crime and the operation of the criminal justice system would be withdrawn from public view." Id.

The Magistrate Judge concluded that the search warrant materials in their entirety were not unduly prejudicial to Mr. Blowers. He also noted that the position put forth by Mr. Blowers ignores the ability of the trial court to ensure Blowers' constitutional right to a fair trial through (1) the use of voir dire to ensure the selection of a neutral and impartial jury and (2) the issuance of limiting instructions during trial when appropriate. (Mem. and Order, June 13, 2005, 14-15.) Given that the common law presumption favors public access to judicial documents and given the emphasis in the Fourth Circuit on using trial procedures to protect the defendant from negative publicity, it is determined that Judge Horn's recommendation as to the search warrant is in accord with Fourth Circuit

precedent and should be adopted. An *in camera* review of the search warrant affidavit supports the view that any negative publicity resulting from unsealing those portions of the affidavit can be adequately addressed through the voir dire process. It is therefore unlikely that the release of the entire affidavit will interfere with Mr. Blowers' constitutional right to a fair trial.[4] The search warrant affidavit is ordered released in its entirety.

### III.

Both the United States and Mr. Blowers have objected to the Magistrate Judge's recommendation that materials from United States v. Plaksin, et al, No. 3:02CR93 ("Plaksin materials") be unsealed. Both parties contend that these documents are not "judicial documents" and therefore are not subject to the common law right of public access.

These documents include a proffer submitted by the attorney for a defendant seeking to provide substantial assistance to the government and a series of photographs depicting a number of persons, including Agent Blowers, in an apparently relaxed, partying setting. Neither the documents nor proffer bore any relation to the Plaksin case except for the fact that Agent Blowers was the case

---

[4] Mr. Blowers also contends that if the redacted portions of the affidavit were to remain under seal until after his trial has concluded, this delay would only minimally impact the media's common law right of access. However, the Fourth Circuit has emphasized the value of contemporaneous media access to criminal proceedings: "the value of openness ... is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure." In re Charlotte Observer, 882 F2d at 856.

agent. Not believing that any of the material would be the proper subject of impeachment but not wishing to run afoul of any arguable production requirement under Brady[5] or Giglio[6], the prosecutor filed a motion *in limine* seeking a ruling that none of the materials could be the subject of inquiry during that trial. Along with the motion, the materials were submitted to Judge Voorhees for his inspection *in camera*. Judge Voorhees concurred and determined that none of the material was the subject of appropriate inquiry during the trial. The materials touched this case when Judge Voorhees, the district judge originally assigned to the Blowers case, remembered his *in camera* inspection during Plaksin and ordered that copies of the material be provided to Mr. Blowers' attorneys.

As discussed above, the common law presumes a public right of access to inspect and copy all judicial records and documents. Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Although the definition of the term "judicial documents" is not entirely settled, "there appears to be agreement that it does not arise from the mere filing of papers or documents, but only those used, submitted, or relied upon by the court in making its decision." Smithkline Beecham Corp. v. Synthon Pharm., Ltd., 210 F.R.D. 163, 167 (M.D.N.C. 2002) (citing S.E.C. v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001)). A number of

---

[5] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[6] Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763 (1972).

7

courts have wrestled with the contours of the definition of "judicial documents," but most have focused on the issue of whether the document was relied upon or interpreted by a court. See, e.g., Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986) (the common law presumption of access does not extend "beyond materials on which a court relies in determining a litigant's substantive rights"); U.S. v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court . . . ."); Bank of America Nat'l Trust & Sav. Ass'n. v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344-45 (3rd Cir. 1986) (because the parties chose to file their settlement agreement with the court so that the court could interpret the agreement and enforce its terms, the settlement agreement was a judicial document); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 781 (3d Cir. 1994) (settlement agreement which was never "filed with, interpreted, or enforced by the district court" was not a judicial document).

The Fourth Circuit has held that "the mere filing of a document with a court does not render the document judicial." In re Knight Ridder, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished opinion) (citing U.S. v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)). In that case, the court concluded that "a document becomes a judicial document when a court uses it in determining litigants'

8

substantive rights." Id. at *4. The document must therefore "play a relevant and useful role in the adjudication process for the common law right of public access to attach." Id. The Fourth Circuit emphasized that the documents in question in In re Knight Ridder did not play *any* role in the district court's adjudication of the case and therefore could not be considered judicial documents. Id.

Although In re Knight Ridder is an unpublished opinion, its reasoning is highly persuasive and very relevant to the issues presented by this case. The Plaksin materials were submitted to the court for *in camera* review for the sole purpose of determining whether they were discoverable by defense counsel. See U.S. v. Wolfson, 55 F.3d 58, 61 (2d Cir. 1995) ("We are not aware . . . of any common law principle that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public."). At no point during the subsequent trial were the Plaksin materials used or relied upon by the district court in determining those defendants' substantive rights. In fact, the district court specifically found that the sealed documents were "not relevant to the issue to be determined at trial, namely, whether the Government can prove, beyond a reasonable doubt, that the Defendants [committed the charged crimes.]" (Order, Jan. 15, 2003, 1.)

Furthermore, although the district court ordered that some of the Plaksin materials be turned over to defense counsel, it declined to include the photographs

9

in this order. The photographs therefore remain confidential discovery material. In addition, the court allowed the government to redact the remaining materials so as to protect the identity of third parties who were not relevant to the issues presented at trial. Defense counsel was expressly instructed that the sealed materials were not to be disseminated for any purpose, not even to their respective clients. Moreover, the materials that were shared with defense counsel were used for a very limited purpose: after the direct examination of the government's witness, the parties were to argue whether the sealed materials had become relevant under Brady/Giglio and thus could be used for cross examination. (Order, Jan. 15, 2003, 3.) Ultimately, the materials were not used during cross examination or at any other time during the trial. In short, the Plaksin materials, like the materials in In re Knight Ridder, did not play any role in the adjudication of the case.

The Charlotte Observer and WCNC-TV argue that because of the process by which the Plaksin materials came to be filed under seal, these documents are distinguishable from those at issue in In re Knight Ridder and thus should be considered "judicial documents."[7] They make two points in support of this position: 1) the district court judge ultimately ordered that they be turned over to

---

[7] The Charlotte Observer and WCNC-TV also argue that Local Rule of Criminal Procedure 55.1(D) "mandates that sealed documents shall be unsealed at the close of a criminal case." (Joint Mem., July 8, 2005, 4.) However, after having reviewed the text of Local Rule 55.1(D), the Court declines to adopt this interpretation of the Rule.

10

defense counsel and 2) a total of five motions were filed by the Government concerning the sealed documents [Doc. Nos. 79, 80, 81, 86, 89]. However, as discussed previously, only *some* of the documents were turned over to defense counsel and, then, only for a very limited purpose. Moreover, the motions filed by the government relating to the sealed documents consist entirely of requests for *in camera* reviews and motions to exclude testimony relating to the sealed documents. In S.E.C. v. TheStreet.com, TheStreet.com took a similar position when it argued that the fact that the district court had reviewed a document in order to decide whether to enter a protective order rendered the document a judicial document. 273 F.3d 222, 233 (2d Cir. 2001). The Second Circuit rejected this argument saying, "[this] rule . . . would transform every document that a court reviews into a "judicial document" presumptively open to the public, despite well-settled law to the contrary." Id.; see also, Pansy v. Borough of Stroudsburg, 23 F.3d 772, 782 (3d Cir. 1994) ("Simply because a court has entered a confidentiality order over documents does not automatically convert those documents into "judicial records" accessible under the right of access doctrine."). Similarly, these documents and photographs were presented to Judge Voorhees for an *in camera* inspection because the prosecution believed them not to be pertinent to the case on trial and sought an order holding them not to be. Judge Voorhees agreed. They played no part in any decision concerning the defendants in the Plaksin case.

Finally, the policy concerns often invoked in decisions to keep judicial documents under seal weigh against unsealing the Plaksin materials in this case. In cases involving judicial documents, the trial court must determine whether the public's right of access is outweighed by competing interests. In re Knight Pub. Co., 743 F.2d 231, 236 (4th Cir. 1984). Among these competing interests, the Supreme Court has identified the court's interest in ensuring that its files are not used to "promote scandal" or to "serve as reservoirs of libelous statements for press consumption." Nixon, 435 U.S. at 598. In this case, a number of third parties are named or depicted in the Plaksin materials. Their privacy interests certainly weigh against the unsealing of these documents as much of what would be released would only serve to promote scandal or cause unnecessary embarrassment. See U.S. v. Gotti, 322 F.Supp.2d 230, 250 (E.D.N.Y. 2004) (sentencing letters were "precisely the type of documents which the Supreme Court in Nixon warned would only gratify private spite or promote public scandal.").

The Court declines to adopt the Magistrate Judge's recommendation that the Plaksin materials be unsealed. These materials are not judicial documents and thus not subject to the common law right of access. There are also significant policy interests weighing against the release of these materials. It is, therefore,

ORDERED that the <u>Plaksin</u> materials remain sealed.

This the 17th day of October, 2005.

_____
United States District Judge