IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 3:05-CR-0093 |
| | ) | |
| ERIK B. BLOWERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM ORDER**

TILLEY, Chief Judge

For the reasons set forth below, the defendant Erik B. Blowers' Motion to Suppress Fruits of Illegal Search and Rule 41(e) Motion for Return of Property [Doc. # 48] is DENIED.

I.

On September 1, 2004, Special Agent Erik Johnson[1] obtained a search warrant for Blowers' office at the Charlotte Division of the Federal Bureau of Investigation ("Charlotte office"). In connection with the search warrant application, Agent Johnson submitted an affidavit with two attachments: Attachment A describes the location to be searched and Attachment B lists the items to be seized. When the Magistrate Judge issued the search warrant, he

---

[1] Special Agent Erik Johnson is an agent with the United States Department of Justice, Office of the Inspector General ("OIG") and the lead case agent in the investigation of Erik Blowers.

ordered that the search warrant application, Agent Johnson's affidavit and the two attachments to the affidavit be sealed. However, the actual search warrant that was issued by the Magistrate Judge includes two attachments: Attachment A describes the place to be searched and Attachment B lists the items to be seized. The attachments to the search warrant are identical to those accompanying the sealed affidavit that Agent Johnson submitted in connection with the search warrant application and are incorporated by reference into the search warrant. Nonetheless, the Magistrate Judge did not seal the search warrant or its incorporated attachments.

Later that day, Agent Johnson called the head of the Charlotte office, Special Agent in Charge Kevin Kendrick. Agent Johnson informed SAC Kendrick that he would be executing the search warrant the following day and consulted him as to how the search could be carried out so as to minimize disruption to the office. At SAC Kendrick's suggestion, Agent Johnson, accompanied by Special Agents Mike Fletcher and Kevin Reis, arrived at the Charlotte office at 7:30 a.m. on September 2nd to execute the search warrant. When they arrived, the agents presented SAC Kendrick with a copy of the warrant, including the attachments. SAC Kendrick reviewed these documents and then asked that the agents wait in his office until Blowers arrived.

After waiting a few hours, the agents decided to execute the search warrant regardless of whether Blowers was present. SAC Kendrick then escorted the

agents to Blowers' office. The office door was closed when they arrived and SAC Kendrick knocked on the door before opening it. Blowers was seated at his desk inside the office. SAC Kendrick told Blowers that the agents were with the Office of the Inspector General and had a search warrant for his office. He then asked Blowers to come with him and Blowers left his office, accompanying SAC Kendrick without comment. Soon after the agents began searching the office, SAC Kendrick returned for Blowers' coat. He told the agents that Blowers was leaving, but did not indicate that Blowers wanted to see the warrant.

The search lasted approximately three hours. While conducting the search, the agents created a list of seized property and a corresponding diagram of the office showing where the property was found. The agents also created a second list of property that had been removed from the office pursuant to OIG's administrative investigative authority.[2] Because they had been informed that Blowers had left the office, the agents left a copy of the warrant and the two inventories with SAC Kendrick. They asked that he give the warrant and the inventory to Blowers when he returned to the Charlotte office. However, Agent Johnson did not leave the two attachments to the search warrant with SAC Kendrick.

On September 9, 2004, Agent Johnson returned the warrant to the

---

[2] This list consists of a number of computer hard drives and a CD-ROM of Blowers' network files.

Magistrate Judge who had issued it, along with an inventory of the property that had been taken during the search. Agent Johnson verified the inventory by signing the return in the presence of the Magistrate Judge. Approximately one month later, in early October 2004, SAC Kendrick contacted Agent Johnson and informed him that Blowers had complained that the agents had failed to leave all the documents related to the warrant. On October 18, 2004, the government provided a copy of the complete search warrant including the attachments to Blowers.

Blowers filed a Motion to Suppress Fruits of Illegal Search [Doc. # 48] on August 3, 2005 and the Government responded to Blowers' motion in its Consolidated Response of September 9, 2005 [Doc. # 56]. Blowers replied to the Government's Response on September 23, 2005 [Doc. # 57]. A hearing on the Defendant's motion to suppress was held on September 29 and November 2, 2005. At this hearing, both Agent Johnson and Agent Fletcher testified about the execution of the search warrant.

Blowers contends that evidence gained from the September 2, 2004 search should be suppressed for the following reasons: (1) Agent Johnson did not include the attachments to the search warrant when he gave it to SAC Kendrick for the purpose of providing it to Blowers; (2) the search warrant and its attachments were never presented to Blowers while the search was taking place; (3) some of the items seized by the agents were beyond the scope of the search warrant; and (4) the agents violated Fed. R. Crim. P. 41(f) because they did not leave a copy of the

4

warrant or a receipt for the seized property for Blowers and they did not prepare and verify an inventory in his presence. Blowers also moves for a return of illegally seized property pursuant to Fed. R. Crim. P. 41(g).[3]

## II.

In a motion to suppress, the moving party has the burden of proving that suppression is proper. Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). This burden must be met by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974).

## III.

The Fourth Amendment requires that a search warrant describe the place to be searched and the items to be seized with particularity. U.S. Const. amend. IV; see Groh v. Ramirez, 540 U.S. 551, 557 (2004). However, "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Id. at 557-58. In this case, the search warrant incorporated two attachments describing the place to be searched and the items to be seized. These attachments were included with the search warrant when the Magistrate Judge issued it. It is therefore clear that the Magistrate Judge found probable cause to search and to

---

[3] Although Blowers refers to Fed. R. Crim. P. 41(e) in his Motion for Return of Property, it appears that he is actually referring to the provisions of Rule 41(g).

seize every item described in the attachments. Cf. Groh, 540 U.S. at 560 ("[U]nless the particular items [to be searched and seized] are . . . set forth in the warrant itself, or at least incorporated by reference . . . , there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit."). The search warrant for Blowers' office satisfied on its face the Fourth Amendment's particularity requirement because its attachments were clearly incorporated by reference.

However, when Agent Johnson left the warrant with SAC Kendrick for Blowers, he chose not to include the incorporated attachments. Blowers contends that because of this omission he had no notice of what the warrant authorized to be searched and seized and thus the search should be considered unconstitutional under the Fourth Amendment. (Def.'s Mot. Supp. 2-3.)

Courts generally have held that the Fourth Amendment does not require that a defendant be given notice of a lawfully conducted search. See City of West Covina v. Perkins, 525 U.S. 234, 246 n.1 (1999) ("Although we have never addressed this issue, there is near unanimous agreement among the lower courts that the notice requirements imposed by Federal Rule of Criminal Procedure 41 . . . are not required by the Fourth Amendment") (citing W. LaFave, Search and Seizure § 4.12 (3d ed. 1996)). In United States v. Simons, the Fourth Circuit held that the government's failure to leave a copy of the search warrant for the defendant when the defendant was not present during the search did not render the search

unconstitutional under the Fourth Amendment. 206 F.3d 392 (4th Cir. 2000). In doing so, the Fourth Circuit noted that "[t]he Fourth Amendment does not mention notice . . ." Id. at 403. In this case, the agents executing the search warrant did in fact leave a copy of the warrant and an inventory of the property that had been seized for Blowers. The failure to include the attachments in this package does not render the search unconstitutional. See Frisby v. United States, 79 F.3d 29 (6th Cir. 1996) (holding that agents' failure to serve taxpayer with attachment to search warrant that enumerated items to be seized did not render search and seizure unconstitutional).

Therefore, the issue in this case is whether the failure to provide the attachments to the search warrant at the time of the search constitutes a violation of Fed. R. Crim. P. 41 and, if so, whether this violation warrants suppression of the evidence found during the search. Fed. R. Crim. P. 41 sets out the procedure for obtaining and executing a search warrant and provides a remedy in cases where evidence has been illegally obtained. In particular, Rule 41(f)(3) requires that the officer executing a search warrant give a copy of the warrant to the person whose property is searched or leave a copy of the warrant at the place where the officer took the property.[4] However, the Fourth Circuit has held that "[t]here are two

---

[4] Fed. R. Crim. P. 41(f)(3) provides that the "officer executing the warrant must: (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." In 2002, the Federal Rules of Criminal Procedure were amended and this provision

7

categories of Rule 41 violations: those involving constitutional violations and all others." Simons, 206 F.3d at 403. Ministerial violations "fall into the latter category." Id. "Non-constitutional violations of Rule 41 warrant suppression only when the defendant is prejudiced by the violation or when there is evidence of intentional and deliberate disregard of a provision in the Rule." Id.; see also United States v. Lipford, 203 F.3d 259, 270 (4th Cir. 2000) ("Absent a demonstration of prejudice or bad faith . . . suppression of evidence is not the proper remedy for a violation of Rule 41."); Frisby v. United States, 79 F.3d 29, 32 (6th Cir. 1996) ("[A]lthough the procedural steps enumerated in Rule 41 . . . are important and should not be disregarded, they are ministerial and absent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search.").

In this case, Blowers left the Charlotte office while the agents were conducting the search. The agents, pursuant to Rule 41(f)(3), left a copy of the warrant and an inventory of the property that had been seized with SAC Kendrick, the head of the Charlotte office, and instructed him to give these documents to Blowers. Although Agent Johnson chose not to leave the attachments to the warrant with SAC Kendrick, there has been no evidence that he chose to deliberately disregard Rule 41. Rather, Agent Johnson testified during the

---

was moved from Rule 41(d) to Rule 41(f). Accordingly, many of the cases sited in this Memorandum Order refer to Rule 41(d). However, the language of this provision was not changed when it was renumbered and therefore these cases continue to govern the analysis of Rule 41(f).

suppression hearing that he mistakenly believed the attachments to be under seal because they were identical to the ones that the Magistrate Judge had sealed in connection with the search warrant affidavit.[5] This mistake does not rise to the level of a deliberate violation of Rule 41. See United States v. Simons, 107 F.Supp.2d 703, 705 (E.D. Va. 2000) (agents who thought they had a secret search warrant and thus did not leave a copy of the warrant for the defendant did not deliberately disregard Rule 41).

Furthermore, it does not appear that Blowers was prejudiced by the failure to leave the attachments with SAC Kendrick. Blowers was provided with a copy of the warrant and a list of the items that had been seized at the time of the search. It was not until early October, 2004 that Blowers requested the missing attachments from Agent Johnson. At that time, Agent Johnson consulted with the prosecutors on the case, learned of his mistake, and provided the attachments to Blowers on October 18, 2004. Blowers has not presented any evidence that this delay resulted in prejudice to him. See Simons, 107 F.Supp.2d at 707 (agents' failure to leave copy of search warrant for defendant was not prejudicial). Therefore, the failure to provide the attachments to the warrant to Blowers at the time of the search constitutes a ministerial violation of Rule 41 and does not

---

[5] During the suppression hearing, Agent Johnson also testified that, prior to the Blowers search warrant, he had been the affiant in a search warrant application on only one other occasion.

9

warrant suppression of the evidence gained from the search.[6]

IV.

Blowers also contends that some of the items seized during the search were beyond the scope of the search warrant. In particular, he argues that several items related to his construction business should not have been seized. The Government responds that the items in question were lawfully seized pursuant to the plain view doctrine.

In Coolidge v. New Hampshire, the Supreme Court held that under the plain view doctrine it is permissible for police to seize unnamed items while executing a search warrant naming other objects. 403 U.S. 443 (1971). However, three conditions must be met for the plain view doctrine to apply: (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997). In this

---

[6] Blowers also contends the failure of the agents to present him with a copy of the search warrant and its attachments at the time of the search is a violation of the Fourth Amendment and Fed. R. Crim. P. 41. However, "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve a copy of the warrant on the owner before commencing the search." Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004). Moreover, by the time the agents concluded the search, Blowers had left the office. Therefore, pursuant to Rule 41(f)(3)(B), the agents left a copy of the warrant and an inventory of the seized property with SAC Kendrick and asked him to give these to Blowers. In doing so, the agents fully complied with the applicable provisions of Rule 41.

case, the agents were lawfully in Blowers' office pursuant to the search warrant. Secondly, the search warrant authorized the seizure of papers, records and documents relating to David Simonini and FBI procedures.[7] In order to locate these items, the agents had to open file cabinets and other storage areas and review any file folders contained within. According to the hand drawn map accompanying the search warrant inventory, the items relating to Blowers' construction business were found in these storage areas. Thus, under the warrant, the agents had a lawful right of access to these items.

Finally, the agents also had probable cause to believe that the materials relating to the construction business were evidence of other criminal misconduct by the defendant. OIG had been investigating allegations about the Blowers' construction business since June of 2003. (Govt's Consol. Resp. 53.) Although

---

[7] Attachment B reads as follows:
Items to be seized from office and work area of Erik B. Blowers located in the Charlotte Field Office of the FBI:
(1) documents and tangible objects relating to David Simonini;
(2) documents and tangible objects relating to any government or FBI regulation, policy, procedure, practice, opinion, statement, standard, question, or advice regarding: solicitation and/or acceptance of gifts, benefits, and/or things of value; prohibited sources and/or financial disclosure reporting obligations.
(3) Appointment books, daily diaries, calendars, and other documents and tangible objects relating to any of the items described above; and
(4) Any physical keys, encryption devices, dongles, combinations, and similar physical items and information that are necessary to gain access to the desk, safe, file cabinets, equipment, or any other storage device for documents and tangible objects within the premises to be searched.

the agents had not sought a warrant for the seizure of construction related materials, once they observed these materials in an area where they were authorized by the warrant to be, it was immediately apparent to them that these materials were incriminating and should be seized. The seizure of the construction-related materials was lawful under the plain view doctrine and does not render the search unconstitutional.

V.

Finally, Blowers argues that the agents violated Fed. R. Crim. P. 41(f)(2) & (3) because (1) they did not leave a copy of the warrant or a receipt for the property seized for Blowers and (2) they did not prepare and verify an inventory in his presence. A violation of these sections of Rule 41(f) only warrants suppression if the defendant can show that the executing officers deliberately disregarded the rule or that the violation resulted in prejudice to him. See United States v. Smith, 914 F.2d 565, 568 (4th Cir. 1990) (violations of the return provisions of Rule 41 require suppression only if prejudice or bad faith has been shown); see also W. LaFave, Search and Seizure § 4.12(c) (4th ed 2004) ("the overwhelming weight of authority is to the effect that required warrant return procedures are ministerial and that failure to comply with them is not a ground for voiding an otherwise valid search") (quoting United States v. Kennedy, 457 F.2d 63, 67 (10th Cir. 1972)). In his motion, Blowers argues that Agent Johnson and Agent Fletcher acted with deliberate disregard for these provisions of Rule 41. However, there has been

absolutely no evidence presented to the Court that this is the case.

Furthermore, it is not clear that there has been a violation of Rules 41(f)(2) & (3) in this case. The agents left a copy of the warrant and a list of the property taken with SAC Kendrick to be given to Blowers. As discussed above, they were mistaken in their decision not to leave the attachments to the warrant, but this mistake was not a deliberate violation of Rule 41 and thus does not warrant suppression. Furthermore, although the list of seized property given to SAC Kendrick was not marked "receipt," it provided Blowers with ample information as to what had been taken by the agents. In short, the facts show that the agents fully complied with the provisions of Rules 41(f)(2) & (3).

Similarly, the agents did prepare an inventory at the conclusion of the search. Agent Fletcher prepared the inventory and Agent Johnson reviewed it. Blowers had left the Charlotte office by this time and was not present to be given a copy. However, Rule 41(f)(2) says that the officer need only prepare and verify the inventory in the presence of at least one other credible person. It does not require that the inventory be verified in the defendant's presence. Furthermore, Agent Johnson later presented the inventory to the Magistrate Judge pursuant to Rule 41(f)(4), signed the return, and swore to it in front of the Judge. Again, the agents appear to have satisfied the provisions of this section of Rule 41. Nonetheless, even if there was a violation of Rule 41 in this case, it was at most "ministerial" and certainly does not warrant the suppression of any evidence found

during the search.

## VI.

For the reasons set forth above, the Defendant's Motion to Suppress Fruits of Illegal Search is DENIED. Similarly, because there has been no illegal seizure of property, the Defendant's Rule 41(g) Motion for Return of Property is also DENIED.

This the day of November 21, 2005

_____
United States District Judge